BOARD OF TRADE OF CITY OF CHICAGO v. NATIONAL BOARD OF TRADE OF KANSAS CITY, MO., et al.

(Circuit Court, W. D. Missouri, W. D.   March 25, 1907.)

No. 3,114.

1. EQUITY—PLEADINGS—EXCEPTIONS.

Where, in an equity suit in a federal court, a paragraph of the bill contained averments of diverse citizenship essential to confer jurisdiction on the court over the controversy, an exception to the whole paragraph as impertinent, irrelevant, and immaterial will be overruled.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, § 527.]

2. EXCHANGES—QUOTATIONS—PLEADINGS.

In a suit by a commercial exchange to restrain counterfeiting and simulation of its quotations, a paragraph of the bill containing a recitation of the objects of complainant corporation and the powers conferred by its charter was not objectionable for irrelevancy or immateriality.

[Ed. Note.—Quotations of prices and transactions on exchanges, see note to Sullivan v. Postal Tel. Cable Co., 61 C. C. A. 2.]

3. SAME.

Allegations as to the number of members of complainant corporation, the cost of maintaining and conducting its operations, how the necessary fund was raised, the worth of a membership in the exchange, and the character of the persons who might be admitted were immaterial and irrelevant.

4. EQUITY—PLEADINGS—EXCEPTIONS.

Where a paragraph of a bill contains some good allegations, an exception to the whole paragraph will not lie.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, § 527.]

5. EXCHANGES—QUOTATIONS—PROTECTION—BILL.

In a suit by a commercial exchange to restrain simulation and counterfeiting of its quotations, a paragraph of the bill alleging the manner of operating complainant's exchange, the way in which the information of the operation and markets are distributed and conveyed through telegraph companies throughout the country, and the time occupied in disseminating such information, was not objectionable for irrelevancy or immateriality.

6. SAME.

In a suit by a commercial exchange to restrain alleged simulation and counterfeiting of its quotations, allegations in a paragraph of the bill reciting the circumstances which induced complainant to refuse to allow its quotations to be given to telegraph companies, except under contract that they would not furnish the same to persons desiring to operate bucket shops, in which business it was claimed defendants were engaged, was proper matter of inducement, and was not subject to exceptions for immateriality.

7. SAME.

In a suit by a commercial exchange to protect its quotations from simulation, a paragraph of the bill alleging the relations and contracts between complainant and certain telegraph companies, with which it was not claimed defendants were in any wise connected or against which they were making no claim, was subject to exceptions for irrelevancy.

8. EQUITY—PLEADINGS—CONTRACTS.

A bill incorporating in hæc verba a printed contract in full, even down to the printed names of the signatures and the attestation thereof, was objectionable as a violation of equity rule 26, requiring that bills should be expressed in brief and succinct terms and should contain no unnecessary recitals of contracts or other instruments in hæc verba.

9. EXCHANGES—QUOTATIONS—PROTECTION—BILL.

A paragraph of a bill by a commercial exchange to protect its quotations from simulation, alleging that no person or corporation was receiving market quotations from any of the telegraph companies specified, without having executed complainant's written contract restraining the furnishing of such quotations to bucket shop operators, was objectionable for immateriality.

10. SAME.

Where, in a suit by a commercial exchange to protect its quotations, complainant alleged that they were furnished only under contract required by complainant with certain telegraph companies, restricting the use of the quotations, allegations that none of the defendants had delivered to any of the telegraph companies a contract therefor in the required forms, and that defendants had not acquired the right to receive such quotations, either from the telegraph companies or from any person to whom the telegraph companies were furnishing the quotations, were not objectionable for immateriality or irrelevancy.

11. SAME—EVIDENCE—JUDGMENTS—OTHER PROCEEDINGS.

In a suit by a commercial exchange to protect its quotations, an allegation that after complainant refused to furnish quotations to telegraph companies, except on the execution of certain contracts restricting the use of such quotations, certain persons conducting bucket shops obtained the quotations surreptitiously, whereupon injunction suits were instituted in different courts of the country, some of which were against the present defendants, in which suits complainant was successful, merely stated at most a mere matter of evidence, and was therefore improper.

12. SAME—RIVAL EXCHANGE—INTENT.

An allegation of matter of evidence of defendant's intent in organizing defendant Board of Trade, a rival exchange, was improper.

13. SAME.

In a suit by a commercial exchange to protect its quotations against simulation by parties not entitled to use the same under contract required by complainant, an allegation in the bill of the existence of defendant Board of Trade, what it was designed to accomplish, what it did, and what it represented with reference to the simulation of complainant's quotations, was immaterial.

14. SAME.

In a suit by a Chicago commercial exchange to restrain simulation of its quotations by persons in Kansas City and vicinity, alleged not to be entitled to complainant's quotations, an allegation in a bill that there were no business conditions justifying or giving rise to any trading in grain or provisions in Kansas City which contemplated or involved delivery in Chicago or of grain or provisions located in Chicago, or to the dissemination of quotations in such transactions, was irrelevant.

15. SAME.

Paragraphs charging that, to carry out the illegal purpose of counterfeiting and indirectly obtaining the benefit of complainant's quotations, defendants, other than defendant Board of Trade, co-operating with others, organized such Board of Trade and rented a building in Kansas City to maintain a commercial exchange, and setting out the purposes and aims of the defendants to obtain complainant's continuous quotations in fraud of its rights, were applicable to the history and purposes of defendant organization and its pretensions, and were not, therefore, objectionable for immateriality.

**16. SAME.**

An allegation that, in order to overcome the legal obstacles and to simulate complainant's quotations, defendants, by petition, assert that the transactions made in the exchange room of defendant exchange are for future delivery in the city of Chicago, or for the delivery of warehouse receipts issued by Chicago warehouses, was neither impertinent nor irrelevant.

**17. SAME.**

An allegation that the offerings of defendants, through defendant exchange, were not bona fide, and that their alleged contracts for the purchase and sale of grain and provisions were not real, and did not contemplate real deliveries in Chicago, but were mere pretenses to conceal the real purpose, was pertinent and relevant.

In Equity. Suit by the Board of Trade of the City of Chicago against the National Board of Trade of Kansas City, Mo., and others, to restrain defendants from counterfeiting or simulating complainant's quotations on prices of grain and hog products for future delivery in Chicago, and from directly or indirectly distributing or disseminating, or permitting or aiding others to distribute or disseminate, quotations that might be mistaken for quotations sent out by complainant. On exceptions to the bill. Sustained in part.

The following exceptions to the bill of complaint were offered by the defendants therein named:

Come now the respondents National Board of Trade, Charles C. Christie, A. M. McDearmott, Bruce Deitrich, George W. Clawson, James Donahue, Christian T. Martin, Henry Stevens, George Carpenter, Charles A. Lee, John Quinn, Maurice J. Lane, George Long, Mark L. Tankersley, Harry Cline, Christie Grain & Stock Company, Midland Grain & Stock Company, and Vincent L. Thornton, by their counsel, Harkless, Crysler & Histed, and except to the complainant's bill of complaint herein for impertinency and irrelevancy of statement, and for want of brevity and succinct statement of terms, and because the same contains unnecessary recitals of documents and instruments, and because the same sets out in hæc verba instruments and writings and other matters wholly irrelevant, and for cause of exception show:

1. That the whole of paragraph 1 is impertinent, irrelevant, wholly immaterial, and unnecessary.

2. That in paragraph 2 of said bill is contained the following language: "That the objects of your orator's incorporation are 'to maintain a commercial exchange to promote uniformity in the customs and usages of merchants, to inculcate principles of justice and equity in trade, to facilitate the speedy adjustment of business disputes; to acquire and disseminate valuable commercial and economic information, and generally to secure to its members the benefits of co-operation in the furtherance of their legitimate pursuits,' and that it is given by its charter power to sue and be sued, receive and hold property of all kinds, and dispose of the same by sale or otherwise." That the allegation and matter contained in said language is irrelevant, immaterial, and wholly unnecessary.

3. That in paragraph 2 of said complainant's bill is contained the following language: "To make such rules, regulations, and by-laws as it may think proper or necessary for the government of said incorporation and its affairs, also the power to admit such persons to be members, and expel such members as it may see fit, in manner to be prescribed by its rules, regulations, and by-laws, and generally to do and carry on any business that is usually conducted by Boards of Trade or Chambers of Commerce; but that, as your orator is informed by counsel, it is not by its charter given the power to conduct a telegraph business, nor does said charter impose on your orator the duty of furnishing to the public, or any person whatsoever, the knowledge of quotations of the prices made in transactions between its members within

its exchange hall." That said language is irrelevant, unnecessary, wholly immaterial, and impertinent.

4. That in paragraph 3 of complainant's bill there is contained the following language: "That your orator has at present about 1,800 members, that it has provided in the city of Chicago an exchange building which cost upwards of $1,250,000 and that the yearly cost to your orator of maintaining such building and conducting such exchange is more than $240,000, more than $100,000 of which is raised by yearly assessments upon its members, and that each membership in said exchange is now worth, for the purpose of sale or transfer, the sum of $1,000, and any person of good character and business integrity can become a member of your orator upon application to your orator and paying its regular initiation fee, or by acquiring in lieu thereof from a member a transfer of an existing membership, which is readily purchasable." That said language is impertinent, irrelevant, and wholly immaterial.

5. That in paragraph 3 of complainant's bill is contained the following language: "Said transactions aggregating many million bushels of grain and many million pounds of hog products annually, and having become so large that said exchange has become one of the great grain and provision markets of the United States. That such purchases and sales are permitted by your orator to be made, and are made, only during said market hours and by open viva voce bidding." That said language is irrelevant, immaterial, unnecessary, and impertinent.

6. That in said paragraph 3 of complainant's bill is contained the following language: "And many persons throughout the United States who are engaged in the grain and provision business are willing to and actually pay, and for many years have paid, said telegraph companies large sums of money therefor; and that your orator realizes from the sale of said quotations to certain telegraph companies, as hereinafter more fully set forth, large sums of money annually, but that said quotations are of such a peculiar kind of property that their value depends upon your orator's power to confine the transmission and distribution of said quotations to such telegraph companies and other distributing agencies as will contract therefor with your orator; and the value of said quotations to your orator will be much impaired, if not wholly lost, if telegraph companies or others are allowed to receive or take the same without right, or surreptitiously, or by theft, and, when so acquired, to use the same or distribute them to the public for use." That said allegations contained in said language are wholly immaterial, irrelevant, impertinent, and unnecessary.

7. That said paragraph 3 contains the following language: "And that if any telegraph company or person is permitted to promptly acquire said quotations surreptitiously or by theft, and without paying your orator therefor, or if other persons shall simulate or counterfeit said quotations, or make or distribute quotations similar or like said quotations of your orator, said contracting telegraph companies would be deterred from long continuing to purchase said quotations of your orator, and thereby your orator's property right in said quotations, and the value of said right to your orator, will be destroyed and lost." That the allegations contained in said language are immaterial, impertinent, irrelevant, and unnecessary.

8. That the whole of paragraph 4 of said complainant's bill is impertinent, immaterial, unnecessary, and irrelevant, and should be expunged for that reason.

9. And respondents except to the whole of paragraph 5 of complainant's bill for and in that the same is impertinent, unnecessary, irrelevant, and immaterial, and for that reason should be expunged.

10. And respondents except to the whole of paragraph 6 of complainant's bill for the reason that the same is impertinent, unnecessary, irrelevant, and immaterial, and for that reason should be expunged.

11. And respondents except to all that portion of paragraph 7 of complainant's bill setting out in hæc verba the contracts between the various telegraph companies and the complainant, for the reason that the same is in violation of rule 26 of equity practice, prohibiting the setting out of instruments in hæc verba, and for the further reason that said contracts with the telegraph com-

panies so set out in hæc verba are wholly immaterial, unnecessary, impertinent, and irrelevant to the case.

12. That in the concluding part of paragraph 7 of complainant's bill is the following language: "Which said contract is still in full force and effect, and said Western Union Telegraph Company and said Postal Telegraph Cable Company have been since the date thereof, and now are receiving from said Board of Trade and selling to their customers said quotations, and that no company, other than said four telegraph companies above named, has sought or acquired from your orator the right to sell or distribute said quotations, except certain subsidiary companies of said Western Union Telegraph Company and Postal Telegraph Cable Company, including the Gold & Stock Telegraph Company, which have signed agreements with your orator as provided in clause 8 of said contract between your orator and said Western Union and Postal Telegraph Cable Companies, but that the only one of said subsidiary companies selling or distributing said quotations within the state of Missouri is said Gold & Stock Telegraph Company, which acts only as the agent of said Western Union Telegraph Company in so doing, but that your orator is willing to make like contracts with any telegraph company desiring to have and distribute said quotations." That said allegations contained in said language are impertinent, irrelevant, unnecessary, and immaterial.

13. That in paragraph 8 of complainant's bill there is the following language: "That your orator is informed and believes, and therefore charges the fact to be, that no person, firm, or corporation is receiving said market quotations from and of said telegraph companies without having first executed and delivered one of the agreements in writing required in and by the said contracts aforesaid, and that every person receiving said quotations from said Western Union Telegraph Company or Postal Telegraph Cable Company, or any of said subsidiary companies, has executed and delivered, as in said contract provided, an application, signed by such customer, in the form set out in said contract between said two telegraph companies and your orator, and that each person, firm, or corporation receiving said quotations from said Chicago & Milwaukee Telegraph Company and said Cleveland Telegraph Company has signed an application and contract, either in the form set out in said contract between said Western Union Telegraph Company and Postal Telegraph Cable Company and your orator, or in the form hereto attached and marked 'Exhibit A.'" That the allegations in said language are impertinent, immaterial, irrelevant, and unnecessary.

14. That in said paragraph 8 of complainant's bill is the following language: "And that neither National Board of Trade of Kansas City, Mo., Charles C. Christie, Andrew M. McDearmott, Bruce Detrich, George W. Clawson, William J. Fox, James Donohue, Christian T. Martin, V. G. Gilligan, Henry Stevens, George Carpenter, Charles A. Lee, John Quinn, Maurice J. Lane, George Long, Mark L. Tankersley, Harry Cline, Harry Meredith, Frank J. Miner, nor W. T. Harris has delivered to any of said telegraph companies a contract therefor in either of the forms above set out." That said allegations in the language aforesaid are impertinent, unnecessary, immaterial, and irrelevant to any issue in the cause.

15. That in said paragraph 8 of complainant's bill is the following language: "Nor has any of said defendants acquired the right to receive said quotations under or by virtue of any contract with any of said telegraph companies, or under any correspondent's contract, as provided in said contract with said telegraph company, by reason whereof neither of said defendants is entitled to receive (or is receiving) said quotations from any of said telegraph companies, nor entitled to receive said quotations from any person to whom any of said telegraph companies is furnishing said quotations." That said allegations in the language aforesaid are impertinent, irrelevant, unnecessary, and wholly immaterial.

16. And respondents except to the whole of paragraph 9 of said complainant's bill for impertinency, irrelevancy, immateriality, and because the same and the allegations therein are wholly unnecessary, and for that reason respondents ask that the whole of said paragraph 9 of complainant's bill be expunged.

17. That in paragraph 10 of complainant's bill is the following language: "That your orator is informed and believes that said Christie, Christie Grain & Stock Company, McDearmott, McDearmott Commission Company, Miner, and Cella Commission Company, being by said injunctions enjoined from receiving, using, or displaying the quotations of your orator, conceived the purpose of evading said injunctions by counterfeiting and simulating your orator's said quotations, and thereby, in spite of said injunctions, getting quotations for use in their offices which their customers would regard as in reality, or substantially, the quotations of your orator, and for this purpose applied to and induced said other defendants to co-operate with and assist them in so simulating and counterfeiting said quotations." That said allegations in the language aforesaid are impertinent, irrelevant, immaterial, and wholly unnecessary.

18. That in said paragraph 10 of complainant's bill is the following language: "That for many years prior to the 21st of June, 1905, there had existed a regular commercial exchange, called the Kansas City Board of Trade, in the city of Kansas City, Mo., which had a large number of members, maintained a large exchange room in said city of Kansas City, wherein its members met daily to buy and sell for future delivery, by open viva voce bidding among themselves, all kinds of grain, which said Kansas City Board of Trade provided facilities for all the grain coming to said city. That upon said exchange contracts are, and for many years have been, made for future as well as present delivery; but that in said trading on said exchange there were not made contracts for future delivery wherein it was contemplated or specified that the grain sold or bought should be delivered at the city of Chicago, or by the delivery of warehouse receipts issued by warehouses located in Chicago. That the prices so made on said Board of Trade of Kansas City represented the prevailing prices of grain in Kansas City for present and future delivery, and said prices have been by said Board of Trade collected and disseminated to those engaged or interested in the grain trade of Kansas City." That the allegations and matter contained in said language are impertinent, irrelevant, immaterial, and unnecessary.

19. That in said paragraph 10 of complainant's bill is the following language: "But that there were not, nor are there, any business conditions justifying or giving rise to any trading in grain or provisions in Kansas City which contemplate or involve delivery in Chicago, or of grain or provisions located in Chicago, or to the dissemination of quotations of prices in such transactions." That said allegation and matter contained in said language are impertinent, immaterial, irrelevant, and wholly unnecessary.

20. That in said paragraph 10 is contained the following language: "But that, as your orator is informed and believes, to carry out said illegal purpose of counterfeiting, and thereby indirectly getting the benefit of, said quotations of your orator, the defendants herein, other than said National Board of Trade of Kansas City, Mo., co-operating with sundry other persons, on or about the 1st day of June, 1905, organized the defendant National Board of Trade of Kansas City, Mo., and rented a building in said Kansas City, and have since pretended to maintain there a commercial exchange, whereon is pretended to be transacted the business of buying and selling grain and provisions." That said allegation in the language aforesaid is impertinent, unnecessary, irrelevant, and immaterial.

21. That in said paragraph 10 of complainant's bill is the following language: "But that the real purpose and aim of said defendants, and the real business conducted upon said exchange, are, through the instrumentality of said so-called exchange, to make quotations of prices of wheat, corn, oats, pork, lard, and short ribs (which are the commodities covered by said continuous quotations of your orator), which shall be so nearly identical with said continuous quotations of your orator that said defendants and others purchasing from said National Board of Trade would have the benefit and use of said quotations of your orator without acquiring from your orator the right to receive the same." That the allegations in the language aforesaid are impertinent, unnecessary, irrelevant, and immaterial.

22. That in said paragraph 10 of complainant's bill is the following lan-

guage: "And in order to overcome this, and so make the quotations practically similar to said quotations of your orator, said defendants pretend and assert that the transactions made in said exchange room of said National Board of Trade are for future delivery, and contemplate delivery in the city of Chicago, or the delivery of warehouse receipts issued by Chicago warehouses." That said allegation in the language aforesaid is impertinent, unnecessary, irrelevant, and immaterial.

23. That in said paragraph 10 is contained the following language: "But your orator charges that none of said bidding and offering is bona fide or a real making of contracts for the purchase and sale of grain or provisions, nor do any of said parties thereto contemplate or intend a real delivery in Chicago, or of property in Chicago, but that said pretense of a delivery in Chicago is adopted by the defendants to conceal the real purpose of said pretended trading, and because otherwise said pretended prices and quotations could not be made to conform to the prices in your orator's quotations, as the prices of grain and provisions deliverable in the city of Kansas City are always so variant from the prices of grain and provisions deliverable in Chicago." That the said allegation in the language aforesaid is impertinent, unnecessary, irrelevant, and immaterial.

Upon all of which the respondents above named respectfully ask the judgment of the court.

Defendants Fox, Minor, and the Cella Commission Company, excepted to the bill as follows:

Come now the respondents William J. Fox, Frank J. Minor, and Cella Commission Company, by their counsel, Messrs. Bond, Marshall & Bond, and except to the complainant's bill herein for impertinency, irrelevancy of statement, and for want of brevity and succinct statement of terms, and because the same contains unnecessary recitals of documents and instruments, and because the same sets out in hæc verba instruments of writing and other matters wholly irrelevant, and for cause of exception adopt as their own and file and submit as their exceptions the exceptions as heretofore filed and submitted by the other respondents in this cause.

Henry S. Robbins and Kimbrough Stone, for complainant.
Harkless, Crysler & Histed, for defendants.

PHILIPS, District Judge. An exception to a bill of complaint is in some respects like a demurrer. If it go to the whole bill, and any part of it be good, the exception cannot be sustained in part and overruled in part, but the whole exception must be overruled. So, if an exception be taken to a whole paragraph, any part of which is good and sufficient, the exception must be denied as a whole.

Exception 1. This exception goes to the whole of paragraph 1. This paragraph contains the essential averments of diverse citizenship essential to confer jurisdiction on this court over the controversy. The exception must therefore be overruled.

Exception 2. The matter sought to be expunged by this exception contains a recitation of the objects of the complainant corporation, doubtless as defined by its charter. As such it is material to show the objects, purposes, and powers of the corporation. The exception is overruled.

Exception 3. This exception goes to the recitations of the powers conferred upon the complainant corporation as deduced from its charter. This exception is overruled.

Exception 4. No matters should be alleged, even by way of recitation, in a bill of complaint, which are not material, on which an issue

can be made and evidence taken to support it, as essential to the cause of action. The number of the members of the complainant corporation, and the cost of its building and the maintenance and conducting thereof, and how this necessary fund is raised, and the worth of a membership in the exchange, and the character of the persons who may be admitted thereto, are quite immaterial, and are not essential to the maintenance of this bill by the complainant. The exception is sustained.

Exception 5. This exception goes to a part of the same paragraph; but, as it goes to the allegation that such purchases and sales are made only during market hours, the exception is too broad, and must therefore be overruled.

Exception 6. The recitations in this part of paragraph 3 as to the number of persons throughout the United States engaged in the grain and provision business who pay the telegraph companies large sums of money, and the amounts realized by the complainant for quotations given to said companies, might be quite immaterial to sustain the right of action on the part of the complainant. But the portion sought to be expunged by this exception alleges the peculiar character and kind of property the complainant has in the quotations furnished to the telegraph companies, and that this property interest will be impaired or lost if the telegraph companies or others are allowed to receive or take the same without right, surreptitiously or otherwise. The underlying basis of complainant's claim is that it has a property right and interest in said quotations which the law will protect, and, when invaded and injured by the alleged misconduct of the defendants, becomes the subject of protection by appeal to the courts. As the exception goes in part to matter which is good, the whole exception must be overruled.

Exception 7. This exception goes to another portion of the same paragraph, and is overruled for the same reason.

Exception 8. This exception goes to the whole of paragraph 4 of the bill. This paragraph sets out, with perhaps some unnecessary detail, the manner of the operation of the complainant Board of Trade, or exchange, and the way in which the information of the operations and markets of the board are distributed and conveyed through the telegraph companies throughout the country, and the time occupied in the dissemination of this information. This is not immaterial matter, for reasons so palpable, in view of the method of transacting the complainant's business and the importance of persons not members of the association obtaining the information which constitutes the property of the complainant within the given period, as not to require discussion. This exception is overruled.

Exception 9. This exception goes to the whole of paragraph 5 of the bill. The matters recited in the first part of this paragraph tend to show how the Western Union Telegraph Company and the Postal Telegraph Cable Company, through which information of the quotations of the markets given out by the complainant exchange were conveyed in violation of good faith under the licenses given by the complainant to said telegraph companies, by the latter surreptitiously giving out such information for hire to persons other than members of

the board of exchange, to its great detriment; that by such means what are known as "bucket shops," with which some of the defendants, who are alleged to have been the promoters of the defendant National Board of Trade of Kansas City, were connected, and which concerns were wholly dependent upon thus obtaining this information through the telegraph companies. for their business existence; and that these abuses had become so serious as to bring into discredit and disrepute the business character of the complainant, whereby the complainant and its members were deprived of many customers and large sums of money in emoluments and commissions, which would otherwise come to them, but for such discredit cast upon them, and that thereby the complainant was embarrassed and hindered in fulfilling and carrying out the objects for which it was organized, necessitating the termination of such licenses to said telegraph companies, which was the occasion of the institution of regulations by it to prevent the sale and distribution of such quotations by the telegraph companies, and to that end expressed said regulations in a written contract to be signed by the telegraph companies distributing said quotations, obligating the telegraph companies not to give or sell such quotations to any so-called "bucket shop," or to any other telegraph company, and by reason whereof neither of said telegraph companies were, after August 1, 1900, and prior to April 1, 1901, entitled to or did receive or distribute said market quotations. In view of the subsequent allegations of the bill, showing that out of this condition of affairs originated the contract between the complainant and the telegraph companies, it must be conceded that the matter of inducement which led up to the regulations imposed by the complainant and said contracts are not immaterial. This exception is therefore overruled.

Exception 10. This exception goes to the whole of paragraph 6 of the bill. This paragraph sets out the relations of the complainant with the Cleveland Telegraph Company and the Chicago & Milwaukee Telegraph Company, and its regulations and contracts with them. I am unable to perceive the connection of this matter of history with the issues involved in this case; there being no claim that the defendants are in any wise connected with such telegraph companies, or that they are asserting any right or doing any act which in any wise infringes upon or affects the relations between the complainant and these defendants. This exception is sustained.

Exception 11. This exception goes to the matter of pleading the contract between the various telegraph companies and the complainant. The bill incorporates in hæc verba the printed contract in extenso, even down to the printed names of the signatures and the attestation thereof. This is violative of rule 26 of the equity rules, which requires that bills shall be expressed in brief and succinct terms, "and shall contain no unnecessary recitals of deeds, documents, contracts, or other instruments, in hæc verba." This is a wholesome rule of pleading. It is intended to prevent the unnecessary verbiage of contracts and deeds, which are rather formal, than substantial. The substantive effect of said contracts could well be expressed in one-fourth of the space occupied by the infinite recitations and details of this printed

contract. The exception to this part of the paragraph is well taken, and the pleading should be reformed in this respect.

Exception 12. This exception goes to the remaining part of paragraph 7. It is to be conceded that the allegation in this portion excepted to—"that your orator is willing to make like contracts with any telegraph company desiring to have and distribute said quotations"—is quite impertinent, as its willingness to make contracts with any telegraph company could hardly present issuable matter on which testimony could well be taken; but the vice of the exception is that it goes to other matter in that part of the paragraph which is not wholly immaterial, and it must therefore be overruled.

Exception 13. This exception goes to a part of paragraph 8 of the bill, and the court is of opinion it is well taken. It is quite immaterial that no person or corporation is receiving market quotations from any of the telegraph companies without having executed the written agreement specified in said contracts. The issue here is whether the defendants have such contracts or are complying therewith, or whether they have licenses to use the quotations of the complainant company. Whether or not other persons have such licenses or contracts, or are complying therewith, do not concern these defendants. This exception is therefore sustained.

Exception 14. This exception goes to the allegation in said paragraph 8 that none of the defendants herein have delivered to any of said telegraph companies a contract therefor in the forms set out. This exception must be overruled, as it goes to the very gist of the cause of action as to whether or not these defendants have the requisite contracts with or licenses from the complainant.

Exception 15. This exception goes to that part of paragraph 8 which alleges that the defendants have not acquired the right to receive said quotations under any contract with the telegraph companies, and that they are not entitled to receive such quotations from any of the telegraph companies, nor from any person to whom any of said telegraph companies are furnishing said quotations. This is unquestionably material, and the exception must be overruled.

Exception 16. This exception goes to the whole of paragraph 9 of the bill. This paragraph recites that, after the execution of said contracts between the complainant and the telegraph companies, certain persons, after April, 1901, conducting so-called "bucket-shops," were obtaining the quotations of the complainant company in a surreptitious manner, without contract with or license from said companies; and thereupon certain injunction suits were instituted in different courts over the country, some of which were against some of the present defendants, which suits were successfully prosecuted against them. The best test of the materiality of such an issue as this would be, would the record of the proceedings in said suits be competent evidence against the defendants on the hearing of this bill of complaint? The objection to their admissibility would readily occur that the proceedings and judgments were res inter alios acta—arising on a different state of facts, in proceedings to which some of the defendants here concerned were not parties, and which proceedings could not be plead-

ed as res adjudicata. It might be—at least the court will not here undertake to say—that the history of the antecedent litigation touching the improper use of the quotations furnished by the complainant, if known. to the defendants, would be competent evidence on the alleged fraudulent scheme and device of the defendants in organizing the National Board of Trade of Kansas City. If competent for such purpose, it would be mere matter of evidence, which should not be set out in the bill of complaint. This exception must be sustained.

Exception 17. This exception goes to that part of paragraph 10 of the bill which alleges that the complainant is informed and believes that the said Christie, Christie Grain & Stock Company, McDearmott, McDearmott Commission Company, Miner, and Cella Commission Company, having been enjoined from receiving, using, or exhibiting the quotations of the complainant, conceived the purpose of evading said injunctions by counterfeiting and simulating the complainant's quotations, and induced the other defendants to co-operate with them in simulating said quotations. As this allegation is predicated upon the injunction proceedings set out in the preceding paragraph, and is mere matter of evidence on the quo animo of the defendants in organizing the National Board of Trade of Kansas City, it is unnecessary to plead it, and the exception is sustained.

Exception 18. This exception goes to that part of paragraph 10 of the bill which alleges, in substance, the existence of the Kansas City Board of Trade, and what it was designed to accomplish, and what it did, and what it represented. This, it seems to me, is quite immaterial to the essential issues involved in this controversy between the complainant and the defendants. It is quite impertinent, and the exception must be sustained.

Exception 19. This exception goes to that part of paragraph 10 of the bill which alleges that there were no business conditions justifying or giving rise to any trading in grain or provisions in Kansas City which contemplated or involved delivery in Chicago, or of grain or provisions located in Chicago, or to the dissemination of quotations of prices in such transactions. It is not perceived how such matters concern the defendants, or why they are essential to the maintenance of the complainant's cause of action. This exception is sustained.

Exception 20. This exception goes to that part of paragraph 10 which charges that, to carry out the illegal purpose of counterfeiting and indirectly getting the benefit of the complainant's quotations, the defendants, other than the National Board of Trade of Kansas City, co-operating with other persons, on or about the 1st day of June, 1905, organized the defendant National Board of Trade of Kansas City, and rented a building at Kansas City to maintain a commercial exchange, etc. This allegation is not immaterial, as it bears upon the history and purposes of the organization of said National Board of Trade of Kansas City and its pretensions. This exception must be overruled.

Exception 21. This exception also goes to paragraph 10, and that part thereof which sets out the purposes and aims of the defendants to obtain the continuous quotations of the complainant company in

fraud of its rights. This is the very meat of this controversy, and the exception must be overruled.

Exception 22. This exception also goes to another portion of paragraph 10 of the bill, which alleges that in order to overcome the legal obstacles, and to simulate the quotations of the complainant, the defendants, by pretension, assert that the transactions made in the exchange room of the National Board of Trade of Kansas City are for future deliveries, etc., in the city of Chicago, or the delivery of warehouse receipts issued by Chicago warehouses. This is a part of the exposition and delineation of the methods pursued by the defendants, which enabled them to violate the claimed property rights of the complainant company, and as such is by no means impertinent matter. This exception is overruled.

Exception 23. This exception goes to that portion of paragraph 10 which charges that the biddings and offerings of the defendants through said National Board of Trade are not bona fide; that their contracts for the purchase and sale of grain and provisions are not real; that they do not contemplate or intend to make real deliveries in Chicago, or of property in Chicago; and that said pretenses of deliveries, etc., are adopted by defendants to conceal the real purposes of their pretended trading, etc. This is so obviously pertinent to the issues involved as not to need discussion, and the exception must be overruled.